IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PATRICHA OWENS,** | ] |
| **Plaintiff,** | ] |
| v. | ] 2:24-cv-00957-ACA |
| **TOWN OF SNEAD, ALABAMA,** *et al.*, | ] |
| **Defendants.** | ] |

## MEMORANDUM OPINION

Plaintiff Patricha Owens allegedly suffered serious injuries when police officers handcuffed her. (Doc. 1-1 at 17–18 ¶¶ 12–17). She brings this action against the Town of Snead for failure to train, supervise, and monitor and against Assistant Chief Casey Hathcock and Officer Logan Harrelson for violations of her Fourth Amendment right to be free from unreasonable seizure. (*Id.* at 20–22 ¶¶ 27–47). The defendants all move to dismiss the amended complaint for failure to state a claim. (Docs. 4, 6, 13). Because Assistant Chief Hathcock and Officer Harrelson are entitled to qualified immunity on Count One and Ms. Owens has not alleged a policy or custom warranting municipal liability in Count Two, the court **WILL DISMISS** those counts. And because the court will dismiss the only federal claims, the court **WILL DECLINE** to exercise supplemental jurisdiction over the state law claims and **WILL REMAND** those claims to state court.

1

## I.   BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

In 2022, Ms. Owens awoke in the middle of the night to the sound of her doorbell ringing. (Doc. 1-1 at 17 ¶ 13). Ms. Owens went outside dressed in her night clothes to find multiple police officers pointing their guns at her son as he followed the officers' instructions to get on the ground and was handcuffed. (*Id.*). Stepping toward her carport, Ms. Owens asked Assistant Chief Hathcock what was going on. (*Id.*) Assistant Chief Hathcock responded by "yelling and cursing at her," and he became increasingly angry when she repeated the question. (*Id.*).

Officer Harrelson arrived at the house while Assistant Chief Hathcock was yelling at Ms. Owens. (Doc. 1-1 at 17 ¶ 15). Assistant Chief Hathcock asked Officer Harrelson to help him place Ms. Owens in handcuffs. (*Id.* at 17–18 ¶ 16). Ms. Owens tried to tell both officers she had problems with her right arm and shoulder and asked officers not to be handcuffed. (*Id.*). Assistant Chief Hathcock demanded Ms. Owens be handcuffed and held her roughly and violently while attempting to handcuff her behind her back. (Doc. 1-1 at 17–18 ¶ 16). The attempt caused her to fall to the ground where Officer Harrelson and Assistant Chief Hathcock forcibly handcuffed her as she screamed in pain. (*Id.*; *see also id.* at 19–20 ¶ 26). The officers then

arrested Ms. Owens for obstruction. (*Id*. at 17–18 ¶ 16). Later that night, a doctor treated Ms. Owens for lacerations and a sprained shoulder. (Doc. 1-1 at 18 ¶ 17).

## II. DISCUSSION

Assistant Chief Hathcock, Officer Harrelson, and Snead move to dismiss Ms. Owens's amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Docs. 4, 6, 13). Assistant Chief Hathcock and Officer Harrelson both argue they are entitled to qualified immunity on the excessive force claim. (Doc. 5 at 16–22; doc. 7 at 16–22). Snead contends Ms. Owens cannot satisfy her burden under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (Doc. 14 at 8–23). The court will address the claims against the officers first.

### 1. Excessive Force Claims Against Assistant Chief Hathcock and Officer Harrelson

In Count One, Ms. Owens asserts that Assistant Chief Hathcock and Officer Harrelson unreasonably seized her in violation of the Fourth Amendment through the use of excessive force. (Doc. 1-1 at 20 ¶¶ 27–32). The Fourth Amendment protects the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. That freedom "encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). Excessive force makes a seizure unreasonable when the officers' actions are not " 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Ms. Owens contends Assistant

3

Chief Hathcock and Officer Harrelson used excessive force by handcuffing her in the back despite being told of her shoulder and arm problems. (Doc. 1-1 at 20 ¶¶ 27–32). Assistant Chief Hathcock and Officer Harrelson seek a dismissal of the excessive force claim for three reasons: (1) claims against them in their official capacity are duplicative of claims against Snead; (2) the use of force on Ms. Owens was *de minimis*; and (3) they are entitled to qualified immunity. (Doc. 5 at 7–22; doc. 7 at 8–22).

        *a.*    *Official Capacity Claims*

Assistant Chief Hathcock and Officer Harrelson move to dismiss state and federal claims against them in their official capacities. (Doc. 5 at 7–9; doc. 7 at 8–9). Ms. Owens's amended complaint does not explicitly state whether she brings her excessive force claims against Assistant Chief Hathcock and Officer Harrelson in their individual capacities, their official capacities, or both. (*See generally* doc. 1-1 at 15–24). But in her response to the motions to dismiss, Ms. Owens states that she has not brought any official capacity claims against the individual defendants, and she seeks to hold the individual defendants liable. (*See* doc. 9 at 5–6; doc. 10 at 5–6).

The court cannot dismiss official capacity claims Ms. Owens did not bring. Accordingly, the court denies the motion to dismiss any official capacity claims against Assistant Chief Hathcock and Officer Harrelson as moot.

### b. Individual Capacity Claims

Assistant Chief Hathcock and Officer Harrelson maintain they did not violate Ms. Owens's Fourth Amendment rights, (doc. 5 at 10–15; doc. 7 at 7–22) but even if they did, the right was not clearly established at the time of the arrest and so they are entitled to qualified immunity. (Doc. 5 at 16–22; doc. 7 at 16–22). Because the officers are entitled to qualified immunity the court does not address the first argument.

An officer acting within his discretionary authority is entitled to qualified immunity "unless at the time of the officer's supposedly wrongful act the law was already established to such a high degree that every objectively reasonable officer in his place would be on notice that what he was doing was clearly unlawful given the circumstances." *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (quotation marks omitted). Ms. Owens concedes Assistant Chief Hathcock and Officer Harrelson were acting within their discretionary authority. (Doc. 10 at 5 ¶ 6; doc. 9 at 5 ¶ 6). So, Ms. Owens must show that her right to be free from excessive force "was clearly established at the time of the alleged violation." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019).

A right is clearly established when its contours are "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Singletary v. Vargas*, 804 F.3d 1174, 1184 (11th Cir. 2015) (internal

5

quotation marks and citation omitted). A plaintiff may show the existence of a clearly established right in three ways: (1) citing case "law with indistinguishable facts clearly establishing the constitutional right"; (2) pointing to a "broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right"; or (3) establishing that the conduct was "so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009). For purposes of the first and second methods, "the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins ex rel. Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997).

Ms. Owens argues she has a constitutional right to be free from excessive force. (doc. 9 at 5 ¶ 5; doc. 10 at 5 ¶ 5 (citing *Graham*, 490 U.S. 386)). Assistant Chief Hathcock and Officer Harrelson do not dispute the broad principle that the Fourth Amendment protects individuals from excessive force, but "awareness of the existence of an abstract right" is not the same as knowing your conduct violates that right. *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019). "Therefore, officers are entitled to qualified immunity unless the broad principle "squarely governs the specific facts of the case." *H.M. v. Castro*, No. 23-10762, 2024 WL 4799480, at *3

(11th Cir. Nov. 15, 2024) (citing *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citation omitted)).[1]

In this case, Ms. Owens contends that any reasonable officer in Assistant Chief Hathcock and Officer Harrelson's position would know that the force they employed handcuffing a "non-threatening, non-fleeing" person from the back when the officer should have known [the arrestee had] a medical condition that could be aggravated" was excessive. (Doc. 1-1 at 19– 20 ¶¶ 21, 30). But Ms. Owens does not support her contention with any case law that squarely governs these facts. (*See generally* docs. 9, 10). Accordingly, she has not shown that the right she claims was "clearly established" at the time of the alleged misconduct. *Huebner v. Bradshaw*, 935 F.3d 1183, 1191 (11th Cir. 2019).

Because Ms. Owens has failed to meet her burden, Assistant Chief Hathcock and Officer Harrelson are entitled to qualified immunity. Accordingly, the court **WILL GRANT** their motions to dismiss and **WILL DISMISS** Count One against Assistant Chief Hathcock and Officer Harrelson.

### 2. Failure to Train, Supervise, and Monitor Claim Against Snead

Ms. Owens also claims Snead failed to train and supervise its officers when handcuffing arrestees who pose no threat or risk of flight and have a known condition

---

[1] Although *H.M.* is an unpublished opinion, the court finds it persuasive. *See McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1060 (11th Cir. 2022).

that will be aggravated by handcuffing them from behind the back. (Doc. 1-1 at 21 ¶ 40). Snead contends this claim should be dismissed because the police officers did not use excessive force, and even if they did, Ms. Owens failed to allege a policy or custom that caused the constitutional violation. (Doc. 14 at 11–23).

A municipality may not be held vicariously liable for the actions of its employees. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1290 (11th Cir. 2004). Only when the municipality's policy or custom causes the constitutional violation can a municipality be held liable. *Monell*, 436 U.S. at 694. To establish that a municipality's policy or custom caused a plaintiff's injury, the plaintiff must either "(1) identify[ ] an official policy; (2) identify[ ] an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identify[ ] a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022). Ms. Owens neither alleges nor argues that an official policy or a decision by a final policymaking authority caused the alleged violation. (*See* doc. 1-1 at 21 ¶¶ 40–42; doc. 21 at 6–7). So, the court will address only whether Ms. Owens alleged an unofficial custom or policy sufficient to satisfy *Monell*.

A municipality cannot be held liable for failure to train, monitor, or supervise unless "the municipality knew of a need to train and/or supervise in a particular area

8

and the municipality made a deliberate choice not to take any action." *Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 820 (11th Cir. 2017) (quotation marks omitted). A plaintiff can do so in two ways. *See Lewis*, 561 F.3d at 1293. To state a claim for failure to train, supervise, and monitor, Ms. Owens must plead sufficient facts supporting a plausible inference that the municipality was aware that a pattern of violations existed but failed to provide adequate training, supervision, or monitoring or that the likelihood of a constitutional violation is so high that the municipality was on notice of the need for training or monitoring and yet failed to provide that training or monitoring. *Id.* Ms. Owens claims Snead should have known its officers would face the "recurrent situation" of handcuffing compliant individuals who the officer knows suffer from pain that will be aggravated by handcuffing. (Doc. 1-1 at 21 ¶ 41).

Ms. Owens does not allege facts to support this claim. For starters, Ms. Owens's allegations are simply conclusory statements of the elements of the cause of action for failure to train, supervise, or monitor, and the unsupported claim that the number of times an officer will arrest someone with a preexisting problem that aggravates pain while being handcuffed constitutes a "recurrent situation." (*See* doc. 1-1 at 21 ¶ 40). But the court may not consider conclusory allegations. *See Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). Nor can it accept

Ms. Owens's legal conclusion that all such recurrent situations rise to the level of a constitutional violation.

Ms. Owens's complaint alleged that on this particular occasion, two officers handcuffed her painfully despite her lack of resistance and while she attempted to tell them of her preexisting injury. (Doc. 1-1 at 17–18 ¶¶ 15–18, 19 ¶ 26). This single incident cannot show a pattern of violations *See Lewis*, 561 F.3d at 1293. Nor is the need for training, monitoring, and supervising handcuffing so obvious that a single incident can establish municipal liability. *See id.* at 1293 (explaining that a single "questionable use" of hobble restraints did "not rise to the level of obviousness reserved for a narrow range of circumstances where a violation of federal rights may be a highly predictable consequence of a failure to provide adequate training") (cleaned up). Accordingly, the court **WILL DISMISS** Count Two.

### 3. State Law Claims

Because the court will dismiss Ms. Owens's federal claims, only the state law claims remain. A "district court[ ] may decline to exercise supplemental jurisdiction" where, as here, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005). The Eleventh Circuit encourages district courts to do so if all federal claims are resolved before trial. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th

Cir. 2004). The court therefore **WILL DECLINE** to exercise jurisdiction over the remaining claims and **WILL REMAND** those claims.

### III.   CONCLUSION

The court **WILL GRANT** Defendants Assistant Chief Hathcock, Officer Harrelson, and Snead's motions to dismiss Counts One and Two. The court **WILL DISMISS** those claims **WITH PREJUDICE.** The court **WILL DECLINE** to exercise jurisdiction over the remaining state law claims and **WILL REMAND** the state law claims.

**DONE** and **ORDERED** this February 19, 2025.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE